06 CV 13210

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| L. A. MURPHY, MARVIN STERNHELL, and HENOCH KAIMAN, on their own behalf and on behalf of all others similarly situated, ) ) ) ) ) | |
| Plaintiffs, ) ) ) | Civil Action No. _____ |
| vs. ) ) ) | |
| KOHLBERG KRAVIS ROBERTS & COMPANY; CARLYLE GROUP; CLAYTON, DUBILIER & RICE; SILVER LAKE PARTNERS; BLACKSTONE GROUP; BAIN CAPITAL LLC; THOMAS H. LEE PARTNERS; TEXAS PACIFIC GROUP; MADISON DEARBORN PARTNERS; APOLLO MANAGEMENT LP; PROVIDENCE EQUITY PARTNERS; MERRILL LYNCH AND CO., INC.; and WARBURG PINCUS, LLC., ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **CLASS ACTION COMPLAINT** **JURY TRIAL DEMANDED** |
| Defendants. ) ) | |

RECEIVED

NOV 15 2006

U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiffs, individually and on behalf of a class of all those similarly situated that is defined below, bring this action for damages and injunctive relief under the antitrust laws of the United States against Defendants, demand a trial by jury, and complain and allege as follows, based on information and belief:

## NATURE OF THE CASE

1.     The private equity business is experiencing an unparallel period of economic success.  According to an October 30, 2006 article in *BusinessWeek*, nearly $159 billion has poured into private equity funds this year alone, compared to $41 billion in all of 2003.  Annual returns on the funds average approximately 20%.

2.    The private equity community is tightly-knit, and it tries to shield its inner workings and methods from the press. The effort to remain out of the public eye, however, has not deterred the Department of Justice from opening an investigation into potential collusion by large buy-out firms. Specifically, in October 2006, news reports confirmed that DOJ initiated an investigation by sending letters of inquiry to major players in the industry.

3.    The investigation is reportedly focused on deals going back to 2003 and interested in the popular practice of "club deals", when private equity groups team up with one another to buy companies. According to industry experts, as reported in the October 13, 2006, edition of the *Financial Times*, DOJ is investigating instances of collusion, or bid-rigging. In particular, DOJ is focused on whether private equity players – club members - communicate about prices and the value of bids in order to reach secret agreements that keep the target's price low. These practices prevent the target from running a fully competitive auction designed to maximize value for stockholders. The result of this is that investors in the target company are deprived of the full economic value of their holdings and "squeezed out" at artificially low valuations.

4.    Accordingly, this action is brought by a class of plaintiffs (defined below), who at time of the transaction owned or own securities that any one of the defendants purchased or is in the process of purchasing in a "going private transaction" during the period from January 1, 2003 to present.

## JURISDICTION AND VENUE

5.    This action is instituted under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages and costs of suit, including reasonable attorneys' fees, against Defendants for the injuries sustained by Plaintiffs and the members of the Class by reason of the violations, as hereinafter alleged, of Section 1 of the Sherman Act, 15 U.S.C. § 1.

2

6.     This action is also instituted to secure injunctive relief against Defendants to prevent them from further violations of Section 1 of the Sherman Act, as hereinafter alleged.

7.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337 and by Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

8.     Venue is found in this district pursuant to Sections 4, 12 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 22 and 26 and 28 U.S.C. § 1391(b), (c) and (d). Venue is proper in this judicial district because during the Class Period one or more of the Defendants resided, transacted business, was found, or had agents in this district, and because a substantial part of the events giving rise to plaintiff's claims occurred, and a substantial portion of the affected interstate trade and commerce described below has been carried out, in this district.

9.     Defendants, on information and belief, maintain offices, have agents, transact business, or are found within this judicial district.

10.    This Court has in personam jurisdiction over each of the Defendants because each was engaged in an illegal scheme and price-fixing conspiracy that was directed at and had the intended effect of causing injury to persons and entities residing in, located in, or doing business throughout the United States.

## PLAINTIFFS

11.    Plaintiff, L.A. Murphy, is a public shareholder of Univision Communications, Inc. ("Univision"). During the Class Period, and on or about June 27, 2006, Univision, a public corporation, entered into an arrangement to be taken private by a group formed by Defendants Madison Dearborn Partners, Providence Equity Partners, Texas Pacific Partners, Thomas H. Lee Partners, and Saban Capital Group (collectively the "Univision Group") for the specific purpose of purchasing shares owned by the public. The prices to be paid by the Univision Group for equity shares that L.A. Murphy and other public shareholders of Univision hold were suppressed

3

below prices that would otherwise prevail in a competitive market as a result of the conspiracy herein alleged, and as a result of the alleged conspiracy, public shareholders of Univision were injured in its business and property by reason of the antitrust violations alleged herein.

12.    Plaintiff, L.A. Murphy, is a resident of North Carolina.  On information and belief, the conspiracy alleged herein was consummated in New York City.  The prices to be paid for equity shares of Univision were suppressed below prices that would otherwise prevail in a competitive market as a result of the conspiracy herein alleged, and as a result of the alleged conspiracy, plaintiff and members of the class were injured in its business and property by reason of the antitrust violations alleged herein.

13.    Plaintiff, Marvin Sternhell, is a public shareholder of HCA, Inc. ("HCA"). During the Class Period, and on or about July 24, 2006, HCA, a public corporation, entered into an arrangement to be taken private by a group formed by Defendants Bain Capital LLC, Kohlberg Kravis Roberts & Co., and Merrill Lynch & Co. (collectively the "HCA Group") for the specific purpose of purchasing shares owned by the public.  The prices to be paid by the HCA Group for equity shares that Marvin Sternhell and other public shareholders of HCA hold were suppressed below prices that would otherwise prevail in a competitive market as a result of the conspiracy herein alleged, and as a result of the alleged conspiracy, public shareholders of HCA were injured in its business and property by reason of the antitrust violations alleged herein.

14.    Plaintiff, Marvin Sternhell, is a resident of New York.  On information and belief, the conspiracy alleged herein was consummated in New York City.  The prices to be paid for equity shares of HCA were suppressed below prices that would otherwise prevail in a competitive market as a result of the conspiracy herein alleged, and as a result of the alleged

4

conspiracy, plaintiff and members of the class were injured in its business and property by reason of the antitrust violations alleged herein.

15.    Plaintiff, Henoch Kaiman, is a public shareholder of Harrah's Entertainment, Inc. ("Harrah's").  During the Class Period, and on or about October 2, 2006, Harrah's, a public corporation, entered into an arrangement to be taken private by a group formed by Defendants Apollo Management LP and Texas Pacific Group (collectively the "Harrah's Group") for the specific purpose of purchasing shares owned by the public.  The prices to be paid by the Harrah's Group for equity shares that Henoch Kaiman and other public shareholders of Harrah's hold were suppressed below prices that would otherwise prevail in a competitive market as a result of the conspiracy herein alleged, and as a result of the alleged conspiracy, public shareholders of Harrah's were injured in its business and property by reason of the antitrust violations alleged herein.

16.    Plaintiff, Henoch Kaiman, is a resident of New York.  On information and belief, the conspiracy alleged herein was consummated in New York City.  The prices to be paid for equity shares of Harrah's were suppressed below prices that would otherwise prevail in a competitive market as a result of the conspiracy herein alleged, and as a result of the alleged conspiracy, plaintiff and members of the class were injured in its business and property by reason of the antitrust violations alleged herein.

## DEFENDANTS

17.    Defendant Kohlberg Kravis Roberts & Company ("KKR") is a private equity firm specializing in management buyouts.  The company is organized as a Delaware corporation and operates as an investment firm with each company in its portfolio being independently managed and financed.  The company's headquarters are at 9 West 57th Street, New York, NY 10019.

457385.4

18.     Defendant Carlyle Group ("Carlyle") is a Delaware limited liability company headquartered at 1001 Pennsylvania Avenue, N.W., Washington, DC 20004. The company is a global private equity firm which originates, structures and acts as a lead equity investor in management-led buyouts, strategic minority equity investments, equity private placements, consolidations and buildups, and growth capital financings.

19.     Defendant Clayton, Dubilier & Rice ("CBR") is a private investment firm organized as a Delaware corporation, and headquartered at 375 Park Avenue, New York, NY 10152. The firm manages a pool of equity capital on behalf of public and private pension funds, college endowments, private foundations, banks, and insurance companies.

20.     Defendant Silver Lake Partners ("Silver Lake") is a limited partnership organized under the laws of the State of Delaware, maintaining its principal place of business at 2725 Sand Hill Road, Menlo Park, CA 94025. The partnership is a private equity firm focused on large-scale investments in technology and related industries.

21.     Defendant Providence Equity Partners ("Providence") is a private investment firm, organized in Delaware, specializing in equity investments in communications and media companies around the world. Providence is located at 50 Kennedy Plaza, 18th Floor, Providence, Rhode Island 02903.

22.     Defendant Bain Capital ("Bain") is a private investment company with over $17 billion in assets under management. The company's family of funds includes private equity, venture capital, public equity, and leveraged debt assets. The company was organized in Delaware and has headquarters at 111 Huntington Avenue, Boston, Massachusetts 02199.

23.     Defendant Madison Dearborn Partners, LLC ("Madison") is a private investment firm. The Company completed private equity transactions across a broad spectrum of industries,

6

457385.4

including industrial, communications, health-care, consumer and financial. The Company is organized in Delaware and is headquartered at Three First National Plaza, Suite 3800, Chicago, Illinois 60602.

24.     Defendant Thomas H. Lee Partners ("THL") is a private leverage buyout firm. Its typical acquisition targets are middle-market companies with growth potential. The company was organized in Delaware and has its headquarters at 100 Federal Street, 35th Floor, Boston, Massachusetts 02110.

25.     Defendant Texas Pacific Group ("TPG") is a private investment firm with over $20 billion of capital under management; TPG manages a family of funds including private equity, venture capital and public equity and debt investing. The company is headquartered at 301 Commerce Street, Suite 3300, Forth Worth, Texas 76102.

26.     Defendant Apollo Management LP ("Apollo") is an equity fund with over $13 billion under management. It is headquartered at 2 Manhattanville Road, Purchase, New York 10577.

27.     Defendant The Blackstone Group, LP ("Blackstone") is headquartered at 345 Park Avenue, New York, New York 10154. Blackstone is a private merchant bank whose operations include private equity investing.

28.     Defendant Merrill Lynch and Co., Inc. ("Merrill Lynch") is a Delaware incorporated holding company that through its subsidiaries provides investment, financing and advisory services. Merrill Lynch is headquartered at 250 Vessey Street, New York, New York 10080.

29.     Defendant Warburg Pincus LLC is a private equity and venture capital firm headquartered at 466 Lexington Avenue, New York, NY 10017.

30.     The defendants listed in paragraphs 17 through 29 above, are collectively referred to, where appropriate, as the "Private Equity Defendants."

31.     Whenever in this Complaint reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's business or affairs.

## CO-CONSPIRATORS

32.     Various other persons, firms and corporations, not named as the Private Equity Defendants in this Complaint, have participated as co-conspirators with Private Equity Defendants in the violations alleged herein, and aided, abetted and performed acts and made statements in furtherance of the conspiracy.

## CLASS ACTION ALLEGATIONS

33.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

34.     Plaintiffs bring this action on behalf of itself and as a class action under the provisions of Rule 23(a), (b)2 and (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the following class (the "Class"):

> All persons whose own securities were purchased, or are in the process of being purchased, by any of the Private Equity Defendants in a going private transaction effective or starting July 1, 2003 or thereafter. Excluded from the Class are the Private Equity Defendants, co-conspirators, and the present and former partners, predecessors, subsidiaries and affiliates of the foregoing.

35.     Plaintiffs believe that there are thousands of Class members as above described, the exact number and their identities being known by the Private Equity Defendants.

8

457385.4

36.     The Class is so numerous and geographically dispersed that joinder of all members in impracticable.

37.     There are questions of law and fact common to the Class, which questions relate to the existence of the conspiracy alleged, and the type and common pattern of injury sustained as a result thereof, including but not limited to:

a.     Whether Private Equity Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, maintain or stabilize prices of equity shares purchased by Private Equity Defendants and their co-conspirators in the United States;

b.     The identity of the participants in the conspiracy;

c.     The duration of the conspiracy alleged in this Complaint and the nature and character of the acts performed by Private Equity Defendants and their co-conspirators in furtherance of the conspiracy;

d.     Whether the alleged conspiracy violated Section 1 of the Sherman Act;

e.     Whether the conduct of Private Equity Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business and property of Plaintiffs and other members of the Class;

f.     The effect of Private Equity Defendants' conspiracy on the prices of equity shares sold to Defendants and their co-conspirators in the United States during the Class Period; and

g.     The appropriate measure of damages sustained by Plaintiffs and other members of the Class.

9

38.     Plaintiffs are members of the Class, Plaintiffs' claims are typical of the claims of the Class members, and Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs are direct sellers of equity shares and their interests are coincident with and not antagonistic to those of the other members of the Class. In addition, Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

39.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

40.     Private Equity Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

41.     The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

42.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Class is readily definable and is one for which records should exist in the files of Private Equity Defendants and their co-conspirators. Prosecution as a class action will eliminate the possibility of repetitious litigation. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently and without duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many class members who otherwise could not afford to litigate an antitrust claim

457385.4

such as is asserted in this Complaint. This class action presents no difficulties of management that would preclude its maintenance as a class action.

## TRADE AND COMMERCE

43.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

44.     The activities of Private Equity Defendants and their co-conspirators, as described in this Complaint, were within the flow of, and substantially affected, interstate commerce.

45.     During the time period covered by this Complaint, Private Equity Defendants and their co-conspirators purchased equity shares throughout the United States.

46.     Private Equity Defendants and their co-conspirators, and each of them, have used instrumentalities of interstate commerce to purchase and sell equity shares.

## DEPARTMENT OF JUSTICE INVESTIGATION

47.     In October 2006, news reports confirmed that the U.S. Department of Justice had launched an investigation into the price setting practices of private equity firms, including Defendants KKR, Carlyle, CBR, Merrill Lynch and Silver Lake related to deals and business practices in which they engage in the formation of proposals for the purchase of business or proposals for the purchases of businesses.  News reports indicate that Defendants KKR, Carlyle, CBR, Merrill Lynch and Silver Lake have received letters from the New York regional office of the Justice Department seeking broad information about their business practices and involvement in company buyout auctions going back to 2003.

## THE PRIVATE EQUITY DEFENDANTS AND THEIR BUSINESS PRACTICES

48.     Private equity funds are the pools of capital invested by private equity firms like the Private Equity Defendants.  The funds operated by the Private Equity Defendants are generally organized as limited partnerships, which are controlled by the private equity firm that

11

serves as a general partner. The funds obtain capital commitments from certain qualified investors, such as pension funds, financial institutes, and wealthy investors. These investors become passive limited partners in the fund partnership and at such time that the general partner identifies an appropriate investment opportunity, it is entitled to "call" the required equity capital, at which time each limited partner funds a pro rata portion of its commitment.

49.     The Private Equity Defendants may use their pools of capital to bid for control of a company – either private or public – with or without the consent of the target's management.

50.     The Private Equity Defendants and other unnamed co-conspirators reportedly have agreed with each other to form groups or "clubs" that take control of public companies in "going private transactions."

51.     In general terms, a "going private transaction" is the exchange of cash for the shares of the company's existing public shareholders so that, at the end of the transaction, the company's shareholders' base is effectively reduced to permit the company to elect to terminate its public company status.

52.     In the context of "going private transactions," the Private Equity Defendants reportedly agreed that once a private equity firm or group of firms signed a definitive merger agreement with a public company, competing buy-out groups or private equity firms including the Private Equity Defendants could not submit competing bids or take other action that might make it more difficult for the bidding group to acquire the target at the lowest possible price.

53.     In addition, the Private Equity Defendants (and other co-conspirators not named) formed groups (the previously defined "clubs") to submit a single bid for control of a public corporation, thereby limiting competition.

457385.4

54.    Where there is more than one conspiring private equity firm, the Private Equity Defendant or co-conspirator who has not joined the "club" (a so-called "loser") is often given a piece of the deal in the form of equity in the now private company at a subsequent time by the winning group, which again limited competition.

55.    Finally, the Private Equity Defendants share information about their bids in order to control or limit the bids for the public companies, thereby depressing the price.

## VIOLATIONS ALLEGED

56.    Beginning at least as early as January 1, 2003 and continuing until the present, the exact dates being unknown to Plaintiffs, the Private Equity Defendants and their co-conspirators engaged in a continuing agreement, understanding and conspiracy in restraint of trade to artificially fix, maintain or stabilize prices of equity shares purchased by Private Equity Defendants and their co-conspirators or that are in the process of being acquired in the United States in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

57.    The contract, combination and conspiracy consisted of a continuing agreement, understanding and concert of action among the Private Equity Defendants and their co-conspirators, the substantial terms of which were to fix, maintain, or stabilize prices for equity shares purchased by the Private Equity Defendants and their co-conspirators in the United States. Among the public corporations that have done, or are doing, transactions for prices that are below market rates by reason of the conspiracy alleged herein are those identified in the chart presented below and include: Harrah's Entertainment Inc.; Linens 'n Things, Inc.; Jacuzzi Brands, Inc.; Metals USA, Inc.; Sourcecorp; HCA Inc.; Michaels Stores, Inc.; OSI Restaurant Partners, Inc.; Warner Chilcott PLC; Burlington Coat Factory Warehouse Corp.; Sungard Data Systems, Inc.; Freescale Semiconductor, Inc.; CarrAmerica Realty Corp.; La Quinta Corp.; Wyndham International Inc.; Extended Stay America, Inc.; Meristar Hospitality Corp.;

457385.4

HealthMarkets, Inc.; Boca Resorts, Inc.; Prime Hospitality Corp.; Kinder Morgan Inc.; Open Solutions Inc.; Toshiba Ceramics Co. Ltd.; P&I Personal & Informatik AG; Breed Technologies, Inc.; Masonite International Corp.; Univision Communications, Inc.; Yankee Candle Co., Inc.; Kerzner International Ltd.; Education Management Corp.; Serena Software, Inc.; Pacific Edge Software, Inc.; Neiman-Marcus Group, Inc.; Aleris International, Inc.; Petco Animal Supplies, Inc.; Intergraph Corp.; Lenovo Group Ltd.; Aramark Corp.; West Corp.; Somera Communications, Inc.; Sintex Industries Ltd.; and Vaibhav Gems Ltd.

58.     The chart presented as Exhibit A lists each private equity defendant on the X axis and each going private transaction at issue on the Y axis. The chart demonstrates that the private equity defendants worked in concert on many of the going private transactions during the Class period.


59.     In formulating and effectuating the aforesaid contract, combination or conspiracy, the Private Equity Defendants and their co-conspirators did those things that they combined and conspired to do, including, among other things:

(a)     forming "clubs" among themselves for the purpose of bidding collectively in company buyout auctions;

(b)     exchanging information among themselves on bids and potential bids in connection with company buyout auctions;

(c)     agreeing among themselves as to bids submitting and not submitted in connection with company buyout auctions;

(d)     submitting bids for equity shares at agreed upon prices in connection with company buyout auctions;

14

457385.4

(e)     monitoring and implementing the agreements among members of the conspiracy; and

(f)     entering into banking arrangements to deprive competitive bidders of financing.

60.     The activities described above have been engaged in by the Private Equity Defendants and their co-conspirators for the purpose of effectuating the unlawful arrangements to fix, maintain and/or stabilize prices of equity shares purchased by the Private Equity Defendants and their co-conspirators in the United States.

## EFFECTS

61.     The unlawful contract, combination or conspiracy has had the following affects, among others:

a.     prices paid by the Private Equity Defendants and their co-conspirators to Plaintiffs and the members of the Class for equity shares were maintained at artificially low and non-competitive levels; and

b.     Plaintiffs and members of the Class were paid less for equity shares sold to Defendants and their co-conspirators than they would have paid in a competitive marketplace, unfettered by Defendants' and their co-conspirators' collusive and unlawful price-fixing.

62.     During and throughout the period of the aforesaid contract, combination or conspiracy, Plaintiffs and members of the Class directly sold equity shares to the Private Equity Defendants or are in the process of selling equity shares in the United States.

63.     Plaintiffs and the other Class members were paid less for their equity shares that they sold to the Private Equity Defendants and their co-conspirators than they would have been paid under conditions of free and open competition.

64.     As a direct and proximate result of the illegal combination, contract or conspiracy, Plaintiffs and the members of the Class have been injured and financially damaged in their respective businesses and property, in amounts which are presently undetermined.

## JURY TRIAL DEMAND

65.     Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all of the claims asserted in this Complaint so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray as follows:

A.      That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure.

B.      That the contract, combination or conspiracy, and the acts done in furtherance thereof by the Private Equity Defendants and their co-conspirators, be adjudged to have been in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

C.      That judgment be entered for Plaintiffs and members of the Class against the Private Equity Defendants for three times the amount of damages sustained by Plaintiffs and the Class as allowed by law, together with the costs of this action, including reasonable attorneys' fees.

D.      That the Private Equity Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from, in any manner continuing, maintaining or renewing the contract, combination or conspiracy alleged herein, or from engaging in any other contract, combination or

16

conspiracy having a similar purpose or effect, and from adopting or following any practice, plan, program or device having a similar purpose or effect.

     E.     That Plaintiffs and members of the Class have such other, further and different relief as the case may require and the Court may deem just and proper under the circumstances.

DATED:  November 7, 2006          By: _____

                                Fred T. Isquith (FI 6782)
                                Gregory Nespole (GN 6820)
                                Gustavo Bruckner (GB 7701)
                              **Wolf Haldenstein Adler Freeman**
                                  **& Herz LLP**
                                270 Madison Avenue
                                New York, New York 10016
                                (212) 545-4600

                                **Wolf Haldenstein Adler Freeman**
                                  **& Herz LLP**
                                Mary Jane Edelstein Fait (ME 1434)
                                55 West Monroe Street, Suite 1111
                                Chicago, Illinois  60603
                                (312) 984-0000

                                Attorneys for Plaintiffs L.A. Murphy,
                                Marvin Sternhell and Henoch Kaiman

17

# EXHIBIT A

# Exhibit A

| | Apollo | Bain | Blackstone | Carlyle | Clayton | KKR | Madison | Merrill | Providence | Silver Lake | Texas Pacific | Thomas H. Lee | Warburg |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *Harrah's Entertainment Inc.* | • | | | | | | | | | | • | | |
| *Linens 'n Things Inc.* | • | | | | | | | | | | | | |
| *Jacuzzi Brands Inc.* | • | | | | | | | | | | | | |
| *Metals USA Inc.* | • | | | | | | | | | | | | |
| Sourcecorp | • | | | | | | | | | | | | |
| *HCA Inc.* | | • | | | | • | | • | | | | | |
| Michaels Stores Inc. | | • | • | | | | | | | | | | |
| *OSI Restaurant Partners Inc.* | | •* | | | | | | | | | | | |
| Warner Chilcott PLC | | •* | | | | | | | | | | •* | |
| *Burlington Coat Factory Warehouse Corp.* | | • | | | | | | | | | | | |
| Sungard Data Systems Inc. | | • | • | | | • | | | • | • | | | |
| *Freescale Semiconductor Inc.* | | | •* | •* | | | | | | | •* | | |
| CarrAmerica Realty Corp. | | | • | | | | | | | | | | |
| La Quinta Corp. | | | • | | | | | | | | | | |
| Wyndham International Inc. | | | • | • | | | | | | | | | |
| Extended Stay America Inc. | | | • | | | | | | | | | | |
| Meristar Hospitality Corp. | | | • | | | | | | | | | | |
| HealthMarkets Inc. | | | •*** | | | | | | | | | | |
| Boca Resorts Inc. | | | • | | | | | | | | | | |
| Prime Hospitality Corp. | | | • | | | | | | | | | | |
| *Kinder Morgan Inc.* | | | | •*** | | | | | | | | | |
| Open Solutions Inc. | | | | • | | | | | • | | | | |
| *Toshiba Ceramics Co. Ltd.* | | | | •* | | | | | | | | | |
| *P&I Personal & Informatik AG* | | | | • | | | | | | | | | |

| | Apollo | Bain | Blackstone | Carlyle | Clayton | KKR | Madison | Merrill | Providence | Silver Lake | Texas Pacific | Thomas H. Lee | Warburg |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Breed Technologies Inc. | | | | • | | | | | | | | | |
| Masonite International Corp. | | | | | | • | | | | | | | |
| *Univision Communications Inc.* | | | | | | | • | | • | | • | • | |
| *Yankee Candle Co. Inc.* | | | | | | | • | | | | | | |
| Kerzner International Ltd. | | | | | | | | | •*** | | | | |
| Education Management Corp. | | | | | | | | | •*** | | | | |
| Serena Software Inc. | | | | | | | | | | • | | | |
| Pacific Edge Software Inc. | | | | | | | | | | • | | | |
| Neiman-Marcus Group Inc. | | | | | | | | | | | • | | • |
| *Aleris International Inc.* | | | | | | | | | | | •* | | |
| Petco Animal Supplies Inc. | | | | | | | | | | | •* | | |
| *Intergraph Corp.* | | | | | | | | | | | •* | | |
| Lenovo Group Ltd. | | | | | | | | | | | •* | | |
| Aramark Corp. | | | | | | | | | | | | •* | • |
| West Corp. | | | | | | | | | | | | • | |
| Somera Communications Inc. | | | | | | | | | | | | | • |
| *Sintex Industries Ltd.* | | | | | | | | | | | | | • |
| Vaibhav Gems Ltd. | | | | | | | | | | | | | • |

\* with others
\*\* with Goldman Sachs
\*\*\*with Goldman & others
Italicized deals pending.